[This decision has been published in *Ohio Official Reports* at 92 Ohio St.3d 30.]

KROH, APPELLANT, *v.* CONTINENTAL GENERAL TIRE, INC., APPELLEE.

[Cite as *Kroh v. Continental Gen. Tire, Inc.*, 2001-Ohio-59.]

*Employer and employee—Unlawful discriminatory practices—Court of appeals' reversal of jury award in sex discrimination action and finding that trial court erred in denying motion for directed verdict reversed and trial judgment reinstated.*

(No. 00-16—Submitted November 28, 2000—Decided June 13, 2001.)

APPEAL from the Court of Appeals for Summit County, No. 19412.

_____

PFEIFER, J.

{¶ 1} Plaintiff-appellant, Nancy O. Kroh, filed suit against defendant-appellee, Continental General Tire, Inc. ("General Tire"), claiming that General Tire had discriminated against her because of her gender, in violation of R.C. 4112.02 and 4112.99. At the close of Kroh's case, General Tire moved for a directed verdict, claiming that Kroh had failed to establish a prima facie case of gender discrimination because the males with whom she compared herself were not situated similarly to her. The trial court denied the motion.

{¶ 2} After a jury trial, the jury found for Kroh and awarded $708,000 in damages for back pay and benefits, front pay and benefits, pension losses, and pain and suffering.

{¶ 3} On appeal, the court of appeals found that the trial court erred by denying the motions for directed verdict. The court of appeals stated, "Considering the evidence presented by Kroh, reasonable minds could only conclude that she did not demonstrate that General Tire treated her differently from similarly situated male employees. * * * It is clear from reading their testimony on direct examination by Kroh, however, that these [allegedly similarly situated] employees performed

jobs that differed significantly in function, responsibility, and scope from her own. * * *

{¶ 4} "In effect, her claims noted legitimate differences in the conditions of employment, but invited the jury to find discrimination by comparing apples with oranges."

{¶ 5} The court reversed the judgment of the trial court and entered judgment for General Tire.

{¶ 6} The cause is now before this court pursuant to the allowance of a discretionary appeal.

{¶ 7} A directed verdict may be granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party." Civ.R. 50(A)(4). The court of appeals correctly noted that a motion for a directed verdict must be denied when "substantial, competent evidence has been presented from which reasonable minds could draw different conclusions."

{¶ 8} The only issue before us in this case is whether Kroh established, to the extent necessary to survive a motion for directed verdict against her, that the male employees to whom she compared herself were "similarly situated" in all relevant respects. Without such a showing, Kroh's claim of gender discrimination is fatally flawed, and the court of appeals was correct to reverse the judgment in her favor.

{¶ 9} In holding that Kroh had not made the required showing, the appellate court relied on *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, and in particular the following language:

"It is fundamental that * * * the plaintiff must show that the 'comparables' are similarly-situated *in all respects*. Thus, to be deemed 'similarly-situated,' the

individuals with whom the plaintiff seeks to compare [her] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." (Citation omitted and emphasis *sic*.) *Id.* at 583.

{¶ 10} The court of appeals in this case found that Kroh's evidence was "insufficient as a matter of law" to establish that her male colleagues were situated similarly to her under the above standard, and that therefore the trial court had erred in denying General Tire's motion for a directed verdict. We disagree.

{¶ 11} General Tire hired Nancy Kroh in 1966. In 1987, Kroh was promoted to cash manager, with the responsibility of reorganizing the Treasury Department, including the creation of job descriptions for all of the positions in the department. At that time, Kroh was the cash manager, Charles Nagy was assistant treasurer, Ladd Leder was risk manager, and Steven Schwartz was real estate manager. The manager positions of real estate, risk, and cash were all considered interchangeable by General Tire. Kroh, Leder, and Schwartz were at the same salary grade level.

{¶ 12} In 1992, while Nagy was reassigned temporarily to Hanover, Germany, Kroh performed his duties as assistant treasurer. As a result, Kroh expected to be promoted to assistant treasurer. Instead, General Tire hired Michael Worthington, a male, into a newly created position entitled "manager of treasury planning and analysis," though the job was essentially equivalent to assistant treasurer and those duties Kroh had been performing. Kroh testified that she had been performing approximately sixty-five percent of the duties and responsibilities listed in Worthington's job description. Worthington admitted to assuming twenty-five percent of Kroh's former duties.

{¶ 13} John Gritman was named Treasurer in April 1992, at which time all of the Treasury Department managers, including Kroh, reported to him. Mike

Brabec, the credit manager, testified that if Kroh reported to Gritman, then he would consider her to be his (Brabec's) peer. Brabec, Ray Doyle (the national credit manager), and Kroh were on the same or similar level of the organizational structure.

{¶ 14} "A prima facie standard that requires the plaintiff to demonstrate that he or she was similarly-situated in every aspect to an employee outside the protected class receiving more favorable treatment removes from the protective reach of the anti-discrimination laws employees occupying 'unique' positions   *  * *.  [I]f the non-protected employee to whom the plaintiff compares himself or herself must be identically situated to the plaintiff in every single aspect of their employment, a plaintiff whose job responsibilities are unique to his or her position will *never* successfully establish a prima facie case." (Emphasis *sic*.)  *Ercegovich v. Goodyear Tire & Rubber Co.* (C.A.6, 1998), 154 F.3d 344, 353.  See, also, *Graham v. Long Island RR.* (C.A.2, 2000), 230 F.3d 34, 40.

{¶ 15} Kroh was the cash manager at General Tire.  There were no other cash managers, so she could not compare herself to anyone who had exactly the same duties as herself.  She did, however, present evidence that tends to show that the male managers she compared herself to reported to the same boss, had similar titles, were at a similar level on the company's organizational chart, and had the same salary classification.

{¶ 16} As with all records, the one before us is incomplete.  However, we do not need to know everything to be able to determine that Kroh was "similarly-situated to the non-protected employee in all *relevant* respects." (Emphasis *sic*.) *Ercegovich,* 154 F.3d at 353.  According to *Ercegovich*, what is relevant depends on the case. *Id.*  In this case, we believe that Kroh established the relevant aspects of the "similarly situated" issue in her case, *i.e.*, that the male colleagues who allegedly received favorable treatment were in the same department, occupied

similar positions according to the organization chart, and reported to the same manager. In other words, she compared herself to her peers.

{¶ 17} To be sure, counsel for General Tire presented ample evidence supporting their arguments. It is even possible that they presented more and better evidence. However, our task is not to weigh the evidence. We conclude that substantial, credible evidence was presented from which reasonable minds could draw different conclusions. Accordingly, we are unwilling to reverse a jury verdict simply because the court of appeals considered Kroh to be an apple and her peers to be oranges.

{¶ 18} Similarly, there was ample evidence before the trial court to warrant its decision to deny Kroh's motion for prejudgment interest, its decision not to send the issue of punitive damages to the jury, and its decision not to award attorney fees and costs.

*Judgment reversed and*

*trial court judgment reinstated.*

MOYER, C.J., concurs.

DOUGLAS, RESNICK and F.E. SWEENEY, JJ., concur in judgment and concur separately.

COOK and LUNDBERG STRATTON, JJ., concur in part and dissent in part.

───────────────

**DOUGLAS, J., concurring.**

{¶ 19} While I concur in the judgment of the majority, I would also reverse the trial court's denial of prejudgment interest and attorney fees. Further, I would remand the case to the trial court for trial solely on the issue of punitive damages. Only when we start allowing these additional sanctions as compensation and punishment for discriminatory practices against women (and minorities) will the practice not be so prevalent. How else will the laudatory goal of equal pay for equal work and equal opportunity for promotion and advancement ever be reached?

Herein, a jury heard all of the evidence and the surrounding facts and did the best it could with what it was permitted to decide.

RESNICK and F.E. SWEENEY, JJ., concur in the foregoing concurring opinion.

_____

**COOK, J., concurring in part and dissenting in part.**

**{¶ 20}** I agree with the majority that Kroh established, *to the extent necessary to survive a motion for directed verdict,* that the male employees to whom she compared herself were "similarly situated" for purposes of her unequal-pay claim.

**{¶ 21}** The only case that the court of appeals relied upon in support of its decision to the contrary is *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577. *Mitchell*, however, is readily distinguishable from the case at bar. In that case, the Sixth Circuit noted that the plaintiff had "produced *no facts* to establish that the two white employees she identified as not having been fired" were similarly situated to her. (Emphasis added.) *Id.* In a footnote, the Sixth Circuit reiterated that there was *"no evidence of record"* (emphasis *sic*) to establish that the duties and responsibilities of those employees to whom Mitchell compared herself were similar, or that they reported to the same supervisor. *Id.* at 583, fn. 5.

**{¶ 22}** Here, in contrast to *Mitchell*, Kroh *did* present evidence during her case-in-chief tending to establish that at least some of the males to whom she compared herself for purposes of her unequal-pay claim performed several similar job functions, occupied the same position on the company's organizational chart, and reported to the same supervisor for a certain period. Kroh also testified that she had been "told by management" that these other positions were "interchangeable" with her own. For purposes of a directed verdict, such evidence must be construed most strongly in her favor. Civ.R. 50(A)(4).

**{¶ 23}** The court of appeals determined that "Kroh's feelings and perceptions that these men constituted her peer group are not determinative." Yet the evidence adduced at trial here included *more* than just self-serving testimony by Kroh about her own "feelings and perceptions." Kroh's case-in-chief included testimony from eight other company employees, including testimony from several of the male employees to whom Kroh compared herself. As the majority notes, at least one of the males to whom Kroh compared herself testified that if Kroh reported to the same supervisor, then *he* would have considered Kroh to be his peer.

**{¶ 24}** Because *Mitchell* was the only case relied on by the court of appeals in its analysis of Kroh's evidentiary burden on the issue of comparability, it is also worth noting that the Sixth Circuit has cautioned district courts against "applying an exceedingly narrow reading of the *Mitchell* decision" and has slightly modified the standard that it announced in *Mitchell*. *Ercegovich v. Goodyear Tire & Rubber Co.* (C.A.6, 1998), 154 F.3d 344, 352. In *Ercegovich*, the Sixth Circuit reasoned:

"We explained in *Mitchell* that when the plaintiff lacks direct evidence of discrimination, 'the plaintiff must show that the "comparables" are similarly-situated in all respects,' absent other circumstantial or statistical evidence supporting an inference of discrimination. * * * Although this statement appears to invite a comparison between the employment status of the plaintiff and other employees in every single aspect of their employment, *Mitchell* has not been so narrowly construed. * * * The plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered 'similarly-situated'; rather, * * * the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in 'all of the *relevant* aspects.' " (Emphasis *sic*.) *Id.* at 352.

**{¶ 25}** Though I agree with the majority's decision to reverse the court of appeals' judgment, I must respectfully dissent from the majority's decision to simply reinstate the jury's verdict. Given our reversal here of the decision

regarding the directed verdict, there remain two assignments of error and three cross-assignments of error that have yet to be examined on appeal.[1]  In a single sentence, without any discussion of the parties' arguments or citation to supporting legal authority, the majority purports to resolve three of these assigned errors even though they were never passed upon by the court below.  This cause should be remanded to the court of appeals for proper consideration of any assignments of error and cross-assignments of error that it had previously deemed moot.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

———————————

*Katherine C. Hart Smith*, for appellant.

*Buckingham, Doolittle & Burroughs, LLP*, *James D. Kurek* and *Eleanor J. Tschugunov,* for appellee.

———————————

---

1. In its first and third assignments of error below, General Tire argued that the trial court erred in refusing to grant its motion for new trial, and that the trial court should have granted it a directed verdict or judgment notwithstanding the verdict on Kroh's claim for lost pension benefits.  Kroh's three cross-assignments of error concerned the denial of her motion for prejudgment interest (here, Proposition of Law No. VI), the trial court's refusal to send the issue of punitive damages to the jury (Proposition of Law No. IV), and the trial court's failure to award Kroh attorney fees and costs (Proposition of Law No. V).  When a majority of this court granted Kroh's discretionary appeal, it did so on all propositions of law.  See *Kroh v. Continental Gen. Tire, Inc.* (2000), 88 Ohio St.3d 1501, 727 N.E.2d 924.