[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
Defendant-appellant Showe Management Corporation ("Showe") appeals from the judgment entered against it following a jury trial on its claim that the defendant-appellee, Cora Walker, had breached her lease agreement. Showe advances four assignments of error.
In this action, Showe claimed that Walker had failed to make payments in accordance with the terms of her lease. Showe's original complaint was filed on December 3, 1999. Attached as an exhibit was a copy of a ten-day notice to leave the premises, dated November 18, 1999, for Walker's "non-payment and non-tender of rent as provided in the Lease Agreement and Entry Setting Bond, filed November 4, 1998 in Hamilton County Municipal Court: Case #98CV27145." No transcripts for the case numbered 98CV27145 have been transmitted to this court, but a copy of a decision journalized on November 16, 1999, in favor of Walker, is in the record as an attachment to Walker's motion to consolidate her claim against Showe for intentional infliction of emotional distress. While that decision found that Walker had used offensive language, it concluded that she had not breached her lease, nor had she fed squirrels, stalked the halls, violated the pet policy, or threatened to fight. The decision was not admitted as an exhibit at trial in this case, although the jury did hear testimony that Showe had been unsuccessful in a prior eviction action against Walker, which had taken fifteen months to resolve. In addition to the November 18, 1999, ten-day notice, Showe's exhibits at trial included a copy of its second ten-day notice, which claimed the following:
 Non-payment of December rent in the amount of $138.00 due December 1, 1999. Non-tender and non-payment of rent for November, 1999 in the amount of $138.00, due November 1, 1999 and repeated late payment and late tender of rent since October of 1998.
 Walker leased a handicap apartment at the Cambridge Arms, as she had been wheelchair bound since contracting polio at age six. Walker testified that she had actually lived at the Cambridge Arms since 1984 under several amended leases. Joyce Williams, the resident manager at the Cambridge Arms Apartments testified that Showe received approximately $660 per month from the federal government for Walker's monthly rent and that Walker had paid $138 monthly. Under the bond order in the case numbered 98CV27145, which required Walker to make payments to the clerk of courts equivalent in amount to her monthly rent, there was no date by which those payments had to be made during the month, and the order was still in effect as of December 1, 1999. Walker made bond payments in differing amounts in November and December 1999.
Showe's first assignment of error contends that the trial court erred when it overruled its motion for a directed verdict. A motion for a directed verdict raises questions of law, examining the materiality of the evidence, not the weight of the evidence or the credibility of the witnesses.[1]Thus, our review is de novo.[2] In determining whether Showe merited a directed verdict, we construe the evidence most strongly in favor of Walker, the nonmoving party, and if there was substantial evidence to support Walker's case upon which reasonable minds could have reached different conclusions, Showe's motion was properly overruled.[3]
Showe argues that it was entitled to a directed verdict in this case because Walker was untimely in making monthly $138 payments pursuant to the bond order; Walker failed to pay the December 1999 rent; and Walker failed to carry her burden of proof after Showe had established a prima facie case for restitution of the premises. To be sure, counsel for Showe presented some evidence at trial to support its assertions. "However, our task is not to weigh the evidence."[4]
But there was no testimony to contradict Walker's testimony that from September 1984 through August 1998, she had ever been late in paying her rent. Williams testified that she personally knew of no problems with payments from Walker from September 1997 through August 1998, a period prior to imposition of the bond order. Williams agreed that Walker had not been sanctioned by the trial court for a bond-order payment history that differed from the time for payment required in Walker's lease, and that no eviction actions had been pursued because of Walker's bond-payment history. Williams confirmed her disappointment, as well as that of her manager, after learning on November 16, 1999, from another tenant that Walker had prevailed in the case numbered 98CV27145. On November 17, when Walker learned that the prior litigation concluded, she believed she owed the landlord November rent immediately and went to the rental office to pay it to Williams. Upon learning that Williams was out, but was expected the following day, Walker intended to pay her November rent the following day, rather than to leave her rent check with another tenant at the rental office, due to privacy concerns. Williams confirmed that a tenant had through the fifth day of a month to pay rent without additional late charges. On November 18, 1999, Walker's first ten-day notice to leave the premises was slipped under her apartment door. On December 3, 1999, on the advice of counsel, Walker tendered December's rent, Williams refused it, and Showe commenced this action against Walker. In refusing Walker's tender, Williams told Walker she owed November's rent, late charges, and December's rent.
Walker's lease stated, "The Landlord may not terminate this Agreement for failure to pay late charges, but may terminate this Agreement for nonpayment of rent * * *." Walker received a second ten-day notice dated December 7, 1999. Clearly a failure to pay late charges did not permit Showe to terminate the lease agreement, nor did Walker's failure to pay November's and December's rent terminate the agreement because the bond order was still in effect. Moreover, this action commenced on December 3, although a payment grace period was given until the fifth day of the month. Because the record contains substantial evidence from which reasonable minds could have drawn different conclusions as to whether Walker had failed to pay rent in accordance with the terms of her lease, Showe was not entitled as a matter of the law to a directed verdict. Accordingly, Showe's first assignment of error is overruled.
Showe's second and third assignments of error contend that there was insufficient evidence to support the jury's verdict, and that the verdict was against the manifest weight of the evidence. In a civil case, the test for sufficiency and for weight of the evidence are similar.[5] An appellate court will not reverse a civil judgment on the weight of the evidence if it is supported by some competent, credible evidence going to all the essential elements of the claim or defense.[6] Because the record transmitted to this court contains competent, credible evidence to support the jury's verdict that Walker had not materially breached her lease agreement, and because the jury as the trier of fact was "best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony,"[7] we are unwilling to overturn the judgment in Walker's favor. Accordingly, Showe's second and third assignments of error are overruled.
Showe's fourth assignment of error contends that the trial court erred when it overruled its motion for summary judgment. A motion for summary judgment should be granted if the trial court determines that no genuine issue of material fact remains to be litigated, that the moving party is entitled to judgment as a matter of law, and that the evidence demonstrates that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party opposing the motion.[8] Any error by a trial court in denying a motion for summary judgment is rendered moot or harmless, when a subsequent trial on the same claim reveals that there are genuine issues of material fact supporting a judgment in favor of the party opposing the motion.[9] In this case, while Showe did object prior to trial upon the court's failure to rule on its summary-judgment motion, Showe had told the trial court earlier, "This is a motion for summary judgment. We believe there is a dispute of facts, and that's why we think there is even no point to having a jury, and we should have a ruling as a matter of law." (T.p 39). The trial court responded, "I agree, whether a proffer constitutes * * * a tender is a question of law. But what I'm saying to you is I cannot rely on what you guys tell me about what went on in the rental office. That's my whole point." Clearly the trial court believed that questions of material fact as to whether Walker had failed to comply with her payment obligations remained unresolved prior to trial, and, after reviewing the record, we agree. Accordingly, Showe's fourth assignment of error is overruled.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Hildebrandt, P.J., Winkler and Shannon, JJ.
Raymond E. Shannon, retired, of the First Appellate District, sitting by assignment.
[1] See Schafer v. RMS Realty (2000), 138 Ohio App.3d 244, 257-258,741 N.E.2d 155, 164; Cater v. Cleveland (1998), 83 Ohio St.3d 24, 33,697 N.E.2d 610, 618.
[2] See Schafer v. RMS Realty, supra, at 258, 741 N.E.2d at 155.
[3] See Pelletier v. Rumpke (Mar. 30, 2001), Hamilton App. No. C-000258, unreported; Wagner v. Roche Laboratories, Inc. (1996),77 Ohio St.3d 116, 119, 671 N.E.2d 252, 255; Civ.R. 50(A)(4); Kroh v.Continental Gen. Tire, Inc. (2001), 92 Ohio St.3d 30, 31, 748 N.E.2d 36,37.
[4] See Kroh v. Continental Gen. Tire, Inc. (2001) at 32,748 N.E.2d at 39.
[5] See Cole v. Complete Auto Transit, Inc. (1997), 119 Ohio App.3d 771,777, 696 N.E.2d 289, 293; Duvall v. Time Warner Entertainment Co. (June 25, 1999), Hamilton App. No. C-980515, unreported.
[6] See C.E. Morris Co. v. Foley Constr. Co. (1978), 54 Ohio St.2d 279,376 N.E.2d 578, syllabus.
[7] See Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77,80, 461 N.E.2d 1273, 1276.
[8] See Civ.R. 56(C); see, also, Dresher v. Burt (1996),75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273.
[9] See Continental Ins. Co. v. Whittington (1994), 71 Ohio St.3d 150,642 N.E.2d 615, syllabus.