[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION AND JUDGMENT ENTRY
This is an appeal from the judgment of the Lucas County Court of Common Pleas which granted appellees a directed verdict on appellant's cause of action for medical malpractice. Appellant, Jeana Conrad-Hutsell, sued appellees, Thomas Colturi, M.D. and Digestive Health Care Consultants of Northwest Ohio, Inc., on September 7, 1999, claiming that, between November 1994 and August 1995, Colturi negligently prescribed dangerous and addictive narcotic drugs (Percocet and Tylenol #3 with codeine) to appellant and failed to recognize her addiction to those drugs, which necessitated extensive drug rehabilitation. Appellant was being treated for Crohn's disease.
This matter came for jury trial on February 12, 2001. Following the presentation of appellant's case, the trial court granted a directed verdict to appellees on the basis of primary assumption of risk. Appellant appeals the judgment for directed verdict and raises the following assignments of error:
"First Assignment of Error
 "The trial court erred in granting Defendants' motion for directed verdict based upon the defense of primary assumption of the risk and in finding Defendants owed Plaintiff no duty where state and federal law imposed upon Defendants certain affirmative duties governing the prescription of narcotic drugs.
"Second Assignment of Error
 "The trial court erred in granting Defendants' motion for directed verdict based upon the defense of primary assumption of the risk and in finding Defendants owed Plaintiff no duty because a patient's conduct cannot be, at the same time, both the foreseen risk which imposes the duty on the physician and the defense which totally excuses the physician's breach of that very duty.
"Third Assignment of Error
 "The trial court abused its discretion when it precluded Plaintiff's expert witness, Dr. Jeffrey Allyn, who is a family practitioner and substance abuse specialist, from testifying whether Defendant Colturi, a gastroenterologist, was negligent in his prescription of the number and type of narcotics prescribed to Plaintiff."
Civ.R. 50(A) governs when a trial court may grant a motion for directed verdict:
 "(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
In construing the evidence most strongly in favor of the party against whom the motion is directed, the trial court "must neither consider the weight of the evidence nor the credibility of the witnesses." Strotherv. Hutchinson (1981), 67 Ohio St.2d 282, 284-285. Additionally, where reasonable minds might reach different conclusions regarding the evidence presented and where there is substantial, competent evidence to support the claim of the party against whom the motion is made, the motion for directed verdict must be denied. Kroh v. Continental Gen. Tire, Inc.,92 Ohio St.3d 30, 31, 2001-Ohio-59.
To prevail in a medical malpractice action, a plaintiff must establish (1) the existence of a duty, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the injury. Littleton v. GoodSamaritan Hospital Health Center (1988), 39 Ohio St.3d 86, 92. Physicians owe their patients a duty, and are in fact required by law, to use "reasonable care in the administration of drugs." Ohio Adm. Code4731-11-02(F).
In accordance with R.C. Chapter 119 and R.C. 4731.05, the state medical board may promulgate rules regarding the practice of medicine. Pertinent to this case, R.C. 3719.06(C) states that each written prescription for a controlled substance "shall be properly executed, dated, and signed by the prescriber on the day when issued and shall bear the full name and address of the person for whom * * * the controlled substance is prescribed." Additionally, Ohio Adm. Code 4731-11-02(A) states that "[a] physician shall not utilize a controlled substance other than in accordance with all of the provisions of this chapter of the Administrative Code." Ohio Adm. Code 4731-11-02(C) and (D) set forth the following rules:
 "(C) A physician shall not utilize a controlled substance without taking into account the drug's potential for abuse, the possibility the drug may lead to dependence, the possibility the patient will obtain the drug for a nontherapeutic use or to distribute to others, and the possibility of an illicit market for the drug.
 "(D) A physician shall complete and maintain accurate medical records reflecting the physician's examination, evaluation, and treatment of all the physician's patients. Patient medical records shall accurately reflect the utilization of any controlled substances in the treatment of a patient and shall indicate the diagnosis and purpose for which the controlled substance is utilized, and any additional information upon which the diagnosis is based."
Based on the foregoing, we find that Colturi had certain duties and was required to follow certain procedures when utilizing a controlled substance in the treatment of appellant. In particular, Colturi had to date all prescriptions, accurately maintain appellant's medical records regarding her use of any controlled substances, and consider the potential for abuse when prescribing the controlled substances to appellant.
Colturi testified that a patient's history is of critical importance when prescribing narcotics. Colturi also testified that the following items are important to review and consider in compiling a patient's history: (1) relevant medical records of past care; (2) medical history; (3) pain history; (4) impact of pain on physical and psychological function; (5) previous diagnostic studies; (6) previous utilized therapies; (7) previous or present medications; (8) previous evaluations and consultations; and (9) substance abuse or dependence history. Colturi was aware that appellant's problems with Crohn's disease were long-standing and that she had previously been treated with narcotics for her ailment. Nevertheless, Colturi never sought a complete copy of appellant's medical records from the Cleveland Clinic until after he suspected she was addicted to the narcotics he was prescribing. Additionally, although Colturi suspected overuse and possibly abuse of the narcotics, he neither referred her to a pain management clinic or program, in order to reduce the need for narcotics, nor referred her for drug abuse counseling or rehabilitation. Instead, Colturi attempted to work with appellant to get her to lessen her use, but continued to prescribe narcotics. Based on the foregoing, we find that there are genuine issues of material fact concerning whether Colturi failed to fully consider the possibility that appellant could become addicted to the prescribed narcotics, as required by Ohio Adm. Code 4731-11-02(C).
We additionally find that there is evidence that Colturi failed to comply with R.C. 3719.06(C) on at least one occasion by not dating one of appellant's prescriptions for Percocet. We also note that Colturi claimed that there were a number of forged prescriptions; however, with respect to the ones he did write, we note that he failed to keep a copy of one of the prescriptions. This prescription was of particular importance because Colturi claimed to have written the prescription for ten Percocet pills, but it was filled for ninety. As such, we find that the errors in appellant's medical record could have interfered with Colturi's ability to effectively monitor appellant's drug use, as required by Ohio Adm. Code4731-11-02(D).
Based on the foregoing, and viewing the evidence most strongly in appellant's favor, we find that reasonable minds could conclude differently regarding whether appellant established the elements of medical malpractice. Colturi clearly had statutory duties to appellant regarding the utilization of controlled substances in her treatment. There are genuine issues of material fact regarding whether he breached those duties, i.e. whether he failed to obtain a complete medical history, which would have revealed her previous problem with overuse of narcotics, and whether he failed to maintain accurate records concerning the amount of and frequency which he was prescribing her narcotics. Also, given the alleged breach of his duties, and Dr. Jeffrey Allyn's testimony that there is a relationship between appellant's addiction and Colturi's negligent charting, reasonable minds could conclude differently regarding whether Colturi's utilization of narcotics in treating appellant proximately caused her addiction.
Despite appellant's establishment of a prima facie case of medical malpractice, the trial court found that appellant's action was barred based upon the doctrine of primary assumption of risk. Assumption of the risk arises when a plaintiff has full knowledge of a condition, the condition is patently dangerous, and the plaintiff voluntarily exposes himself or herself to the hazard created. Briere v. Lathrop Co. (1970),22 Ohio St.2d 166, 174-175, citing, Masters v. New York Central Rd. Co. (1947), 147 Ohio St. 293.
Assumption of risk falls into three categories, implied, express, and primary. Implied assumption of risk and contributory negligence were merged and are both governed by R.C. 2315.19. Anderson v. Ceccardi
(1983), 6 Ohio St.3d 110, paragraph one of the syllabus. The doctrines of express and primary assumption of risk, however, remain in effect as defenses in negligence actions and, as a matter of law, act as complete bars from recovery. Id. at 114, and Gallagher v. Cleveland BrownsFootball Co. (1996), 74 Ohio St.3d 427, 431.
The three types of assumption of risk differ. Primary assumption of risk "`is really a principle of no duty, or no negligence, and so denies the existence of any underlying cause of action.'" Gallagher,74 Ohio St.3d at 431, citing, Prosser Keeton, Law of Torts (5 Ed. 1984) 496-497, Section 68. Whereas, in implied assumption of risk cases, the defendant is found to owe plaintiff a duty; however, because plaintiff knew of the danger involved and intelligently acquiesced to it, plaintiff's claim is barred. Anderson at 113. Express assumption of risk arises "where a person expressly contracts with another not to sue for any future injuries which may be caused by that person's negligence." Id. at 114.
At issue in this case is the doctrine of primary assumption of risk. "Primary assumption of risk is a defense of extraordinary strength" and, as such, a trial court "must proceed with caution when contemplating whether primary assumption of risk completely bars a plaintiff's recover." Gallagher, supra at 431-432. In primary assumption of risk situations, "the risk is not created by the defendant's negligence, but by the nature of the activity * * *." Ferguson v. Cincinnati Gas Electric Co. (1990), 69 Ohio App.3d 460, 462. Underlying this doctrine is the notion that "some known risks are so inherent in certain activities or situations that they cannot be eliminated." Brewster v.Fowler (Oct. 13, 2000), Trumbull App. No. 99-T-0091, citing, Ferguson, supra. "The doctrine rests on the fiction that plaintiff has tacitly consented to the risk, thereby relieving defendant of any duty owed to him." Collier v. Northland Swim Club (1987), 35 Ohio App.3d 35, 37, citing, Prosser Keeton, Torts (5Ed. 1984) 480, 481, Section 68.
According to the Ohio Supreme Court, the defense of primary assumption of risk is typified by the baseball cases where a plaintiff is injured when a baseball is hit into the stands. Anderson, supra at 114. Because it is common knowledge that in baseball games hard balls are thrown and batted with great swiftness and are liable to be thrown or batted outside the lines of the diamond, "spectators in positions which may be reached by such balls assume the risk thereof." Id., citing, The Cincinnati BaseBall Club Co. v. Eno (1925), 112 Ohio St. 175, 180-181. However, even where this risk of injury is commonly recognizable, the doctrine does not apply where there is a question of fact regarding (1) whether the owner breached his duty to exercise ordinary care to render the premises reasonably safe by allowing practice outside of the diamond, near the grand stand, during intermission, and (2) whether the spectator assumed the risk of injury under these particular conditions. Eno, supra.
In this case, in order for appellant's medical malpractice claim to be dismissed on the basis of primary assumption of risk, the trial court had to find that there was no risk created by Colturi's actions and that the risk of becoming addicted when taking narcotics was so inherent that it could not be eliminated. See Ferguson, supra at 462, and Brewster,
supra.
The trial court, however, did not make such a finding. Rather, the trial court concluded that appellant primarily assumed the risk of becoming addicted because she knew of the risk of addiction, yet intentionally took the narcotics in excess of the amounts prescribed, lied to Colturi concerning her use, lied to obtain additional prescriptions, and sought narcotics from area hospitals.
Clearly, appellant exceeded Colturi's instructions regarding the amount of narcotics to use to treat her ailments and exhibited classic drug addicted behavior when attempting to acquire additional narcotics. We, however, disagree that such behavior by a patient automatically relieves a physician from any duty to monitor the patient for signs of abuse and ipso facto relieves a physician from any liability for continuing to prescribe narcotics even though abuse or overuse is suspected. Such a finding is against public policy and renders meaningless a physician's statutory obligations to his patients.
Insofar as there is substantial competent evidence to establish that Colturi breached his statutory duties regarding the utilization of controlled substances in treating appellant, reasonable minds could conclude differently regarding whether Colturi's actions created a risk of addiction. Additionally, insofar as addiction is a compulsive behavior, it cannot be found as a "matter of law" that appellant voluntarily acquiesced to the risks involved with taking excessive medication. Accordingly, we find that the trial court erred in granting a directed verdict on the basis of the defense of primary assumption of risk. Although primary assumption of risk is not available under these circumstances, we recognize that a jury may nevertheless find that appellant's claims are barred on the basis of implied assumption of risk or contributory negligence. Appellant's first and second assignments of error are therefore found well-taken.
Appellant asserts in her third assignment of error that the trial court abused its discretion when it precluded her expert witness, Dr. Jeffrey Allyn, from testifying as to whether Colturi was negligent with respect to the amount and type of narcotics he prescribed appellant.
The admissibility of expert testimony is a matter within the sound discretion of the trial court and will not be disturbed on appeal absent a showing of abuse. Alexander v. Mt. Carmel Med. Ctr. (1978),56 Ohio St.2d 155, 157; and Murray Co. Marina, Inc. v. Erie Co. Bd. ofRevision (1997), 123 Ohio App.3d 166, 174. An abuse of discretion is more than mere error of law; it "implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219. Relevant to the present case, Evid.R. 702 provides that a witness may testify as an expert if each of the following apply:
 "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;
 "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony."
Dr. Allyn testified on direct examination regarding the standard of care promulgated by the state medical board concerning the use of narcotics in treating pain. Specifically, Dr. Allyn testified that prior to prescribing narcotics, all physicians are required to do the following: (1) obtain an adequate medical and pain history, including gathering relevant medical records of past care; (2) review previous diagnostic studies, medical evaluations, and utilized therapies and medications; (3) consider whether the patient has a substance abuse or dependency history; (4) conduct a physical assessment of the patient; (5) make an independent determination of diagnosis; (6) develop a plan of treatment; (7) document that pain cannot be adequately controlled by other treatment methods, such as behavior modification, non-narcotic medications or physical therapy; (8) obtain informed consent as to the risks and benefits of therapies available and drugs prescribed; (9) precisely and clearly document on the chart the medication dosage used, the route administered and the amount prescribed; and (10) evaluate the patient at regular intervals to determine the effectiveness of the treatment, verify compliance regarding the use of narcotic drugs, and if progress is not indicated, re-evaluate the treatment plan and consult a pain or drug specialist.
Dr. Allyn was then questioned about whether he believed Colturi "deviated from acceptable standards of medical care for a medical doctor prescribing narcotic medication in 1994 and 1995 when [appellant] was under his care and his treatment." Appellees objected and the trial court sustained the objection, finding that Dr. Allyn was "not competent to express an opinion of the standard of care of a gastroenterologist," as such an opinion was "outside of the scope of his expertise." Insofar as Dr. Allyn is a family practitioner, and was not shown to have any specialized training with respect to treating Crohn's disease, we find that the trial court did not abuse its discretion in precluding Dr. Allyn's testimony regarding the appropriateness of using narcotics in appellant's treatment for Crohn's disease, or the appropriateness of the amount prescribed for her particular symptoms.
Nevertheless, we find that the trial court abused its discretion in precluding Dr. Allyn from testifying regarding whether Colturi deviated from standards of care that apply to all physicians. For instance, Dr. Allyn was properly allowed to testify regarding whether Colturi precisely and clearly documented the chart with respect to the medication dosage used, the route administered and the amount prescribed. We find, however, that Dr. Allyn also should have been permitted to testify as to whether Colturi complied with the remaining duties that are required of all physicians when utilizing narcotics. Specifically, the trial court should have allowed testimony regarding whether Colturi (1) obtained an adequate medical history and pain history; (2) documented a clear plan of treatment; (3) documented that pain could not be adequately controlled by other treatment methods; (4) obtained appellant's informed consent regarding utilization of narcotics in her treatment; (5) evaluated appellant at regular intervals to determine the effectiveness of the treatment; and (6) verified compliance regarding the use of narcotic drugs. Additionally, we find that Dr. Allyn should have been permitted to testify as to whether Colturi deviated from the standards of care by not consulting a pain or drug specialist when he suspected drug overuse or addiction. These topics do not require a specialized expertise as a gastroenterologist; rather, insofar as Dr. Allyn is a family practitioner, held to the same standards of care, he is qualified, pursuant to Evid.R. 702(B), to render an opinion regarding these matters. Accordingly, we find appellant's third assignment of error well-taken, in part.
On consideration whereof, this court finds that substantial justice has not been done the party complaining and the judgment of the Lucas County Court of Common Pleas is reversed. This matter is remanded to the trial court for a new trial. Costs of this appeal to be paid by appellees.
JUDGMENT REVERSED.
James R. Sherck, J., Richard W. Knepper, J., and Mark L. Pietrykowski,P.J., CONCUR.