DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas which denied the motion for directed verdict of appellant, Barbara Lewis, during her trial against appellees, Michael Moront, M.D., and Cardiothoracic Surgeons for Northwest Ohio, Inc. ("Cardiothoracic Surgeons"). For the reasons that follow, we affirm the decision of the trial court.
 {¶ 2} Appellant underwent a coronary bypass surgery, on June 19, 2000, which was performed by Dr. Moront, who was employed by Cardiothoracic Surgeons. Following her surgery, appellant had difficulty breathing and was placed on a ventilator for several months. The parties stipulated that appellant's breathing difficulty was due to her sustaining "a bilateral phrenic nerve injury following open-heart cardiac surgery." The phrenic nerves are responsible for diaphragm function. Appellant asserted at trial that a topical ice slush, used at the inception of the surgery to cool her heart, was responsible for her nerve injury. Appellant asserted that Dr. Moront departed from acceptable standards of care in failing to use some method to insulate and protect from injury the nearby phrenic nerves while using the slush.
 {¶ 3} At trial, Dr. Moront testified that he had no recollection of using an ice slush and that no indication of such was made in appellant's operative notes. However, even assuming he had used the slush, Dr. Moront testified that according to the manner in which he would have applied the slush, insulation of the phrenic nerves was not necessary. He testified that he only applies ice slush to the anterior of the heart for two to three minutes at the onset of surgery to arrest the heart. The phrenic nerves are not in the anterior area of the heart, but are to the side/back of the heart, outside of the pericardium. Additionally, Dr. Moront testified that there are a number of ways by which the phrenic nerves can be injured other than freezing as a result of contact with ice slush.
 {¶ 4} The experts who testified at trial agreed that phrenic nerve paralysis is a recognized complication and known risk of coronary artery bypass grafting. The expert witnesses also agreed that the most probable and likely cause of appellant's nerve injury was ice slush freezing the phrenic nerves. However, the experts testified that there are a number of ways by which the phrenic nerves can be damaged, other than freezing. Moreover, the experts agree that the risk of injury to the phrenic nerves can never be completely eliminated, regardless of the degree of care and skill exercised by the surgeon. In fact, Dr. Andrew Wechsler, appellant's expert, testified that there are reported cases of phrenic nerve paralysis in patients who have never undergone open-heart surgery.
 {¶ 5} The experts, however, disagreed on whether it would be a deviation from the standard of care for a physician to use ice slush and not use some type of insulation over the phrenic nerves. Dr. Brack Hattler testified that Dr. Moront did not breach the standard of care in performing appellant's surgery because he also employs the same method of ice slushing and because using slush "on the anterior surface of the heart carries a very low risk of phrenic nerve injury." Whereas, Dr. Wechsler testified that it would be a departure from the standard of care for any cardiothoracic surgeon to use topical slush to cool the heart, as part of a coronary artery bypass procedure, and not insulate the phrenic nerves. Wechsler, however, also testified that phrenic nerve paralysis is a complication of coronary bypass grafting that can and does occur without regard to surgical care and regardless of whether a surgeon followed accepted methods for performing the surgery.
 {¶ 6} Upon completion of the testimony, appellant moved for a directed verdict and argued:
 {¶ 7} "Dr. Moront's own testimony * * * [is] that the standard of care requires that you not injure the phrenic nerves. The entire testimony in this case is — including the stipulation, is that she did sustain a bilateral phrenic nerve injury, operative word being injury. * * * [A]ll of the other experts have testified that that injury was the cause of using the ice slushing. So by his very definition, Dr. Moront's very definition, he violated the standard of care because he injured the nerves by use of the ice slushing without protection."
 {¶ 8} Appellees responded that the case was not one of res ipsa loquitur and that the standard of care only required Dr. Moront to do all he could to protect and avoid that kind of injury. Appellees further argued:
 {¶ 9} "None of the testimony is suggestive that simply by virtue of the fact that the injury occurred there had to have been malpractice. And that's what he was saying that we've agreed to, when his own expert conceded at the outset of his testimony that that wasn't true; that the mere fact of injury does not indicate that there's been malpractice. * * * He conceded that this can and does happen without regard to the propriety of the manner in which the surgery was done. But moreover, even if you assume that that was the import of Dr. Moront's testimony, the testimony of Dr. Hattler is that he complied with accepted standards of care. So at the most it would be a jury issue."
 {¶ 10} The trial court denied appellant's motion for directed verdict. The jury ultimately entered a defense verdict. Appellant appeals the decision of the trial court and raises the following sole assignment of error:
 {¶ 11} "The trial court erred in denying plaintiff's-[appellant's] motion for directed verdict."
 {¶ 12} Specifically, appellant argues that, according to Dr. Moront, the standard of care was simply not to injure the phrenic nerves. Insofar as the parties stipulated that appellant's nerves were injured, appellant argues that Dr. Moront admittedly breached the standard of care owed appellant.
 {¶ 13} To prevail in a medical malpractice action, a plaintiff must establish (1) the existence of a duty, (2) a breach of that duty, and (3) proximate causation between the breach of duty and the injury. Littleton v. Good SamaritanHospital Health Center (1988), 39 Ohio St.3d 86, 92.
 {¶ 14} "Under Ohio law, as it has developed, in order to establish medical malpractice, it must be shown by a preponderance of the evidence that the injury complained of was caused by the doing off some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct result of such doing or failing to do some one or more of such particular things." Bruni v. Tatsumi (1976),46 Ohio St.2d 127, 131.
 {¶ 15} Civ.R. 50(A) governs when a trial court may grant a motion for directed verdict:
 {¶ 16} "(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 17} In construing the evidence most strongly in favor of the party against whom the motion is directed, the trial court "must neither consider the weight of the evidence nor the credibility of the witnesses." Strother v. Hutchinson (1981),67 Ohio St.2d 282, 284. Additionally, where reasonable minds might reach different conclusions regarding the evidence presented and where there is substantial, competent evidence to support the claim of the party against whom the motion is made, the motion for directed verdict must be denied. Kroh v.Continental Gen. Tire, Inc. (2001), 92 Ohio St.3d 30, 31.
 {¶ 18} Upon a thorough review of the record and applicable law, we find that appellant was not entitled to a directed verdict. The fact that Dr. Moront testified that the standard of care was not to injure the nerves, and that appellant's phrenic nerves were damaged, do not establish that Dr. Moront committed medical malpractice. Doctors take an oath to "do no harm." Dr. Moront's description of the standard of care is aligned with this oath; however, we agree with appellees that this is not a res ipsa loquitur type of case. Rather, even given Dr. Moront's description of the standard of care, we find that appellant must nevertheless establish that Dr. Moront injured her nerves as a direct result of his failure to do what a surgeon of ordinary skill, care and diligence would have done under like or similar circumstances. See Bruni, supra.
 {¶ 19} Dr. Wechsler and Dr. Hattler provided divergent testimony regarding whether applying the ice slush to the anterior portion of the heart in the manner described by Dr. Moront, without insulation of the phrenic nerves, was a breach of the standard of care. Additionally, although the experts testified that the use of ice slush was probably the cause of appellant's injury, there was ample testimony that phrenic nerve damage can occur for any number of reasons, even in the absence of open-heart surgery.
 {¶ 20} Based on the conflicting testimony, and after construing the evidence most strongly in favor of appellees, we find that reasonable minds could have reached different conclusions regarding the evidence presented. See Civ.R. 50(A)(4); and Kroh, supra. We further find that there was substantial, competent evidence to support Dr. Moront's assertion that he did not breach the standard of care when operating on appellant. See Kroh, supra. The trial court therefore did not error in denying appellant's motion for directed verdict. Appellant's sole assignment of error is found not well-taken.
 {¶ 21} On consideration whereof, the court finds substantial justice has been done the party complaining and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Handwork, P.J., Knepper, J., Pietrykowski, J., concur.