HAMILTON, Appellant,

v.

SYSCO FOOD SERVICES OF CLEVELAND, INC., Appellee.

[Cite as *Hamilton v. Sysco Food Servs. of Cleveland, Inc.*, 170 Ohio App.3d 203, 2006-Ohio-6419.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 87558.

Decided Dec. 7, 2006.

The Norton Law Firm Co., L.P.A., and Eric Norton, for appellant.

Benesch, Friedlander, Coplan & Aronoff, L.L.P., Roger L. Schantz, and Jennifer M. Turk, for appellee.

ANTHONY O. CALABRESE JR., Judge.

{¶ 1} Plaintiff-appellant, Deidre Hamilton, appeals the decision of the trial court. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the lower court.

I

{¶ 2} According to the facts, appellee, SYSCO Food Services of Cleveland, Inc. ("SYSCO"), is in the business of providing products and services to food-service operators in the food-service marketing and distribution industry. Appellant was first employed by SYSCO on January 29, 1996, as a transportation clerk. On or about September 2, 1996, appellant became a part-time transportation clerk and

was subsequently switched back to a full-time transportation clerk on or about June 16, 1997. On or about October 18, 1999, she accepted an administrative-assistant transportation position, and on July 3, 2000, appellant accepted the position of city desk supervisor. Thereafter, in 2002, she accepted the position of transportation supervisor and occupied that position until her layoff on October 29, 2004.

{¶ 3} In May 2004, the Cooker restaurant chain shut down all of its restaurants in northeastern Ohio. Consequently, SYSCO lost all of its business with that restaurant chain. In addition, during that same time period in 2004, SYSCO was being pressured by its parent company, SYSCO Corporation, to reduce the number of employees in its operations department, to bring that number within the company benchmarks. This had a dramatic impact on the number of truck drivers available to drive delivery routes. In February 2004, the operations department employed approximately 160 drivers to make its scheduled delivery routes. By the end of October 2004, the number of truck drivers available to make delivery routes had been reduced to approximately 115 drivers.

{¶ 4} As a result of this reduction in business, John Brian Cook, SYSCO's vice president of operations, implemented a reduction in force that included three series of layoffs in 2004 within the operations department. In carrying out the reduction in force, three supervisory employees, in addition to appellant, were laid off in the operations department in 2004. They included William O'Donnell, William Dickerson, and Rick Leonard. One additional employee, Christopher Rivera, resigned during 2004. As a result, a total of five supervisory employees were eliminated from the operations department in 2004.

{¶ 5} Customer-service problems began to increase during the year, and in October 2004, Cook analyzed the transportation-supervisor position and determined that all persons holding that position must possess a commercial driver's license ("CDL"). He believed that requiring every transportation supervisor to have a CDL would allow each transportation supervisor, if necessary, to drive a delivery route and thereby improve customer service by lessening or eliminating late deliveries.

{¶ 6} Nicholas Council and David Sekala both possessed a CDL and retained their transportation-supervisor positions. David Sullivan did not possess a CDL and was transferred to a warehouse supervisory position. SYSCO states that Sullivan was transferred, while appellant was not, because Sullivan had extensive experience in the warehouse side of the business, while appellant had no experience in the warehouse side or with the various computer systems used in the warehouse.

{¶ 7} According to the record, appellant filed a complaint against SYSCO arising out of her layoff from her employment. In her original complaint,

appellant asserted race- and gender-discrimination claims relating to her layoff and to the alleged deprivation of certain "training opportunities" during her employment relationship with SYSCO. On April 18, 2005, the trial court permitted appellant to file an amended complaint in which she asserted an additional wrongful-discharge claim. Appellant then filed a second amended complaint.

{¶ 8} On June 9, 2005, SYSCO answered appellant's second amended complaint, denying that it had discriminated against appellant, and further reiterating that appellant was laid off as part of a reduction in force and reorganization of the operations department because she did not possess a CDL.

{¶ 9} On August 29, 2005, SYSCO filed its motion for summary judgment, seeking the dismissal of appellant's second amended complaint. On October 3, 2005, during the pendency of the motion for summary judgment, appellant dismissed all of her race-discrimination claims alleged against SYSCO. She then filed two memoranda in opposition to the motion for summary judgment. The trial court granted the motion and dismissed appellant's second amended complaint on December 29, 2005. Appellant timely appealed the trial court's judgment entry granting summary judgment in favor of SYSCO.

## II

{¶ 10} Appellant's first assignment of error states the following: "The trial court erred in granting summary judgment on plaintiff's discrimination claims because there were genuine fact issues as to whether gender was a factor in plaintiff being treated worse than similarly-situated male coworkers, laid off and subsequently fired."

{¶ 11} Appellant's second assignment of error states the following: "The trial court erred in granting summary judgment on plaintiff's negligent misrepresentation claim because there were genuine fact issues as to whether plaintiff detrimentally relied on defendant-management's misrepresentations that it was not necessary for her to independently obtain CDL training."

## III

{¶ 12} Appellant argues in her first assignment of error that the lower court erred in granting summary judgment on her discrimination claims because there were genuine fact issues as to whether gender was a factor in her being treated worse than similarly situated male coworkers and in her being laid off and subsequently fired.

{¶ 13} Civ.R. 56 provides that summary judgment may be granted only after the trial court determines that (1) no genuine issues as to any material fact remain to be litigated, (2) the moving party is entitled to judgment as a matter of

law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion and viewing the evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Norris v. Ohio Std. Oil Co.* (1982), 70 Ohio St.2d 1, 24 O.O.3d 1, 433 N.E.2d 615; *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 14} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg* (1992), 65 Ohio St.3d 356, 604 N.E.2d 138.

{¶ 15} We find that summary judgment was properly granted in SYSCO's favor. There was nothing in the pleadings that disputes appellee's argument. Appellant at all times bears the burden of proving that she was discriminated against on account of her gender. *St. Mary's Honor Ctr. v. Hicks* (1993), 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407. SYSCO did not discriminate against appellant when it laid her off and subsequently terminated her because she did not possess a CDL. Moreover, appellant was laid off because of a valid reduction in force. An employee's burden in demonstrating discrimination is heavier when a reduction in force is required by economic necessity. *Carpenter v. Wellman Prods. Group*, Medina App. No. 03CA0032-M, 2003-Ohio-7169, 2003 WL 23094777. SYSCO did not discriminatorily deny appellant any training opportunities. Appellant failed to prove that similarly situated employees were treated better than her.

{¶ 16} We find nothing in the record demonstrating that the lower court's actions were improper.

{¶ 17} Accordingly, appellant's first assignment of error is overruled.

{¶ 18} Appellant argues in her second assignment of error that the lower court erred in granting summary judgment on her negligent-misrepresentation claim because there were genuine fact issues as to whether appellant detrimentally relied on SYSCO's misrepresentations that it was not necessary for her to independently obtain CDL training.

{¶ 19} In *Delman v. Cleveland Hts.* (1989), 41 Ohio St.3d 1, 4, 534 N.E.2d 835, the Ohio Supreme Court articulated the elements of negligent misrepresentation as follows, quoting 3 Restatement of the Law 2d, Torts (1965), Section 552(1):

"One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the

information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

{¶ 20} Therefore, the elements for negligent misrepresentation "require (1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant." *Nichols v. Ryder Truck Rental, Inc.* (June 23, 1994), Cuyahoga App. No. 65376, 1994 WL 285000, discretionary appeal not allowed (1994), 71 Ohio St.3d 1421, 642 N.E.2d 386.

{¶ 21} In *Nichols*, this court specifically rejected the application of the tort of negligent misrepresentation to an employer-employee relationship because an employer is not in the business of supplying information for the guidance of others. We concluded:

> Such persons who are in the business of supplying information for the guidance of others typically include attorneys, surveyors, abstractors of title and banks dealing with no-depositors' checks. The business transactions of the alleged injured party are usually those involving lease or insurance agreements. No court in Ohio, however, has held the tort of negligent misrepresentation applicable to the employer-employee relationship.

(Citations omitted.)

{¶ 22} Appellant acknowledges that no employee has been successful in maintaining a cause of action for negligent misrepresentation against an employer. However, she asks us to recognize a "developing" trend in the law of the tort of negligent misrepresentation in employer-employee relationships. In support of this statement, she relies on other states that have recognized such a cause of action. She argues that this trend in other states suggests that "if the Ohio Supreme Court was specifically asked to decide whether an employer can be held liable for negligent misrepresentations to an employee, it would hold that such a liability may arise." We find that if the Ohio Supreme Court wanted to recognize such a cause of action, it had the opportunity to do so in *Nichols*. Moreover, a majority of the cases cited by appellant in support of this argument existed prior to our decision in *Nichols* and prior to the Ohio Supreme Court's denying the *Nichols* appeal.

{¶ 23} Therefore, based on our precedent in *Nichols*, we find that the trial court properly granted summary judgment in favor of SYSCO on appellant's negligent-misrepresentation claim.

{¶ 24} Accordingly, the second assignment of error is overruled.

Judgment affirmed.

Rocco, J., concurs.

Cooney, P.J., concurs in part and dissents in part.

COLLEEN CONWAY COONEY, Presiding Judge, concurring in part and dissenting in part.

{¶ 25} I agree with the majority's treatment of the second assignment of error regarding the negligent-misrepresentation claim. However, I respectfully dissent from its treatment of the gender-discrimination claim and would reverse the trial court's grant of summary judgment.

## Gender Discrimination

{¶ 26} Hamilton argues in her first assignment of error that the trial court erred in granting summary judgment on her discrimination claims because there were genuine issues of fact as to whether gender was a factor in her being treated worse than similarly situated male coworkers, her being laid off, and her subsequent termination.

{¶ 27} R.C. 4112.02(A) provides:

(A) It shall be an unlawful discriminatory practice:

For any employer, because of the * * * sex * * * of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment.

R.C. Chapter 4112 is Ohio's counterpart to Section 2000e, Title 42, U.S.Code ("Title VII"). Therefore, federal case law interpreting Title VII is generally applicable to cases brought under R.C. Chapter 4112. See, *Genaro v. Cent. Transport, Inc.* (1999), 84 Ohio St.3d 293, 295, 703 N.E.2d 782; *Plumbers & Steamfitters Commt. v. Ohio Civ. Rights Comm.* (1981), 66 Ohio St.2d 192, 196, 20 O.O.3d 200, 421 N.E.2d 128.

{¶ 28} In order to prevail in an employment-discrimination case, Hamilton must directly or indirectly prove discriminatory intent. *Mauzy v. Kelly Servs., Inc.* (1996), 75 Ohio St.3d 578, 587–588, 664 N.E.2d 1272; *Byrnes v. LCI Communication Holdings Co.* (1996), 77 Ohio St.3d 125, 128–129, 672 N.E.2d 145.

{¶ 29} Hamilton argues that she can prove her case indirectly, which permits her to establish discriminatory intent through the analysis set forth in *McDonnell Douglas Corp. v. Green* (1973), 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668. To establish a prima facie case of gender discrimination, Hamilton must show that (1) she is a member of a protected class, (2) she suffered an adverse employment action, (3) she was qualified for the position, and (4) the position was filled by a person outside the protected class. *McDonnell Douglas* at 802, 93 S.Ct. 1817; *Brewer v. Cleveland Bd. of Edn.* (1997), 122 Ohio App.3d 378, 701 N.E.2d 1023. Hamilton may also establish the fourth prong of the *McDonnell Douglas* test by showing that she was treated less favorably than a similarly situated employee

outside her protected class. *Clayton v. Meijer, Inc.* (C.A.6, 2002), 281 F.3d 605, 610. In such a case, Hamilton must prove that all relevant aspects of her employment situation were similar to those of the employee with whom she seeks to compare herself. *Kroh v. Continental Gen. Tire, Inc.* (2001), 92 Ohio St.3d 30, 32, 748 N.E.2d 36, citing *Ercegovich v. Goodyear Tire & Rubber Co.,* (C.A.6, 1998), 154 F.3d 344, 352.

{¶ 30} However, in situations like the instant case where the defendant claims a reduction in work force, the plaintiff is not required to plead the fourth prong of the prima facie framework because in a reduction-of-force situation, the plaintiff is not replaced. *Godfredson v. Hess & Clark, Inc.* (C.A.6, 1999), 173 F.3d 365. Instead, the plaintiff must present additional direct, circumstantial, or statistical evidence tending to show that the employer singled out the plaintiff for discharge for impermissible reasons. *Barnes v. GenCorp, Inc.* (C.A.6, 1990), 896 F.2d 1457, 1465.

{¶ 31} The establishment of a prima facie case of discrimination under *McDonnell Douglas* creates a presumption that the employer unlawfully discriminated against the employee. *Texas Dept. of Community Affairs v. Burdine* (1981), 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207.

{¶ 32} Once a prima facie case of discrimination is established, SYSCO may overcome the presumption by coming forward with a legitimate, nondiscriminatory reason for the discharge. *Kohmescher v. Kroger Co.* (1991), 61 Ohio St.3d 501, 575 N.E.2d 439. Hamilton must then present evidence that SYSCO's proffered reason was a mere pretext for unlawful discrimination. *Manofsky v. Goodyear Tire & Rubber Co.* (1990), 69 Ohio App.3d 663, 668, 591 N.E.2d 752. Hamilton's burden is to prove that SYSCO's reason was false and that discrimination was the real reason for the discharge. *Wagner v. Allied Steel & Tractor Co.* (1995), 105 Ohio App.3d 611, 617, 664 N.E.2d 987. Mere conjecture that SYSCO's stated reason is a pretext for intentional discrimination is insufficient to defeat SYSCO's motion for summary judgment. To satisfy her burden, Hamilton must produce some evidence that SYSCO's proffered reasons were factually untrue. *Powers v. Pinkerton, Inc.* (Jan. 18, 2001), Cuyahoga App. No. 76333, 2001 WL 60035.

## Was Hamilton Qualified?

{¶ 33} In the instant case, it is undisputed that Hamilton has satisfied the first two prongs of the *McDonnell Douglas* test. Hamilton, as a female, is a member of a protected class, and she suffered an adverse employment action by being laid off and subsequently terminated. Therefore, I would focus on the third and fourth requirements under *McDonnell Douglas*—whether Hamilton was qualified for the position of transportation supervisor and whether she was replaced by someone outside the protected class or was treated differently than similarly

situated male employees. I find that questions of fact exist regarding both of these elements.

{¶ 34} SYSCO argues that Hamilton was not qualified for the position of transportation supervisor at the time she was laid off because she did not possess a commercial driver's license ("CDL"). This court has held that to establish whether a person is "qualified," the plaintiff must demonstrate not only that she was capable of performing the work, but that she also met the employer's legitimate needs and expectations. *Neubauer v. A.M. McGregor Home Corp.* (May 19, 1994), Cuyahoga App. No. 65579, 1994 WL 197221.

{¶ 35} Although in *Neubauer* this court held that the decision whether an employee is qualified is measured at the time of termination, applying that standard would be unjust in the instant case. At the time Hamilton was laid off, management had implemented a new criterion for the position of transportation supervisor, which required that all transportation supervisors possess a CDL. Prior to that time, possession of a CDL was not required to meet the employer's needs and expectations for the position of transportation supervisor. In fact, deposition testimony reveals that Hamilton was qualified for the position of transportation supervisor until the additional requirement was implemented. Neither Hamilton nor her male coworker David Sullivan possessed a CDL, and both lost their positions as transportation supervisor. However, only Hamilton was laid off. Sullivan, who had experience in the warehouse department, was transferred there as a warehouse supervisor, where a CDL was not required.

{¶ 36} I would find that genuine issues of material fact exist as to whether Hamilton was "qualified." The imposition of a new requirement for someone who was otherwise qualified for the job and then the termination of that person for lack of the new requirement could be deemed unconscionable, especially when that person had been requesting the necessary training to meet the requirement for several years.

{¶ 37} In *Wexler v. White's Furniture, Inc.* (C.A.6, 2003), 317 F.3d 564, 574, the court held that a court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when considering whether the fired employee was qualified. "To do so would bypass the burden-shifting analysis and deprive the plaintiff of the opportunity to show that the nondiscriminatory reason was in actuality a pretext designed to mask discrimination." Id. Instead, the court should focus on plaintiff's objective qualifications, i.e., education, experience in the relevant industry, and demonstrated possession of the required general skills. Id. at 575–576.

{¶ 38} SYSCO's alleged nondiscriminatory reason for laying off Hamilton was her lack of a CDL. Pursuant to *Wexler,* a court cannot consider this reason when determining whether Hamilton was qualified. Because this was the only reason

given by SYSCO as to why Hamilton was unqualified, summary judgment was improperly granted on this issue.

## Hamilton's Replacement

{¶ 39} In establishing the fourth prong of the *McDonnell Douglas* test, Hamilton argues that a male employee replaced her as a transportation supervisor when she was initially laid off and ultimately terminated. Moreover, she further claims that she was treated differently from similarly situated male employees because she was not given free CDL training.

{¶ 40} SYSCO argues that because Hamilton was terminated due to a reduction in force, she carries the heavier burden of proving by direct, circumstantial, or statistical evidence that she was singled out for impermissible reasons. See *Barnes*, 896 F.2d 1457.

{¶ 41} Although the *Barnes* court recognized a heavier burden on a plaintiff in a work-force-reduction case, it also emphasized the importance of ensuring that such a burden is applied only in a "true" work-force-reduction situation:

> It is important to clarify what constitutes a true work force reduction case. A work force reduction situation occurs when business considerations cause an employer to eliminate one or more positions within the company. An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work. A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Barnes*, 896 F.2d at 1465. See, also, *Langlois v. W.P. Hickman Sys., Inc.*, Cuyahoga App. No. 86930, 2006-Ohio-3737, 2006 WL 2036553, citing *Atkinson v. Internatl. Technegroup, Inc.* (1995), 106 Ohio App.3d 349, 359, 666 N.E.2d 257. Furthermore, an employer cannot avoid liability by changing the job title or by making minor changes to a job in an attempt to avoid liability. Id. See, also, *Kirkendall v. Parker Hannifin Corp.* (July 12, 1995), Lorain App. No. 94CA005955, 1995 WL 422739.

{¶ 42} In the instant case, the evidence shows that when Hamilton was laid off, she held the position of transportation supervisor. After the layoff, Mark Wolf and Allen Shoup were transferred to the transportation department and were given positions as transportation supervisors. John Brian Cook, vice president of operations at SYSCO, testified that Wolf and Shoup were transferred to those positions because they possessed a CDL and were able to perform the additional duty now required for the position.

{¶ 43} Wolf testified that his position as safety manager was eliminated and thus he was transferred to the transportation-supervisor position. The evidence also shows that Wolf had seniority over Hamilton. However, Shoup did not have seniority over Hamilton, but he possessed a CDL. He testified that his fleet-supervisor position was also eliminated, so he was transferred to the transportation-supervisor position.

{¶ 44} The evidence shows that after Hamilton was laid off, her duties were performed by other transportation supervisors and her supervisor. Therefore, it would appear that Hamilton was not "replaced" as defined in *Barnes*, because her work was redistributed and an additional duty was implemented. However, Wolf and Shoup were reassigned from their previous positions to perform Hamilton's duties. Although the evidence shows that the two men had the additional duty of driving a commercial truck, testimony also established that this was not a new and additional duty, because transportation supervisors were performing this task prior to the alleged reduction in force and layoff.

{¶ 45} Moreover, this additional duty could also be deemed a minor part of the job. In fact, Shoup stated in his July 2005 deposition that he had on only three or four occasions since his October 2004 transfer been required to drive a truck that necessitated a CDL. David Sekala stated that between October 2004 and May 2005, he had had to drive a truck that required a CDL approximately three to five times.

{¶ 46} Christopher Thomas stated in his May 2005 deposition that since becoming a transportation supervisor in January 2005, he had driven a truck only once. At his second deposition in October 2005, he claimed that he had driven a commercial truck three additional times. During the May deposition, he stated that there was no need for transportation supervisors to have a CDL. He further opined that based on his day-to-day experience working as a transportation supervisor, he did not think possessing a CDL was essential, based on the actual amount of driving involved. He also averred that based on his experience, a transportation supervisor did not need a CDL to be a successful and productive employee at SYSCO.

{¶ 47} However, Bo Nash stated that since he received the transportation supervisor position, he had driven a truck approximately eight times between July and October 2005. Nick Council stated that since October 2004 he had driven many trucks, sometimes once per week.

{¶ 48} Even evaluating the prima facie case under the heavier burden, evidence exists demonstrating that Hamilton's duties were merely redistributed, and individuals were assigned to perform her duties as well as other duties. However, evidence also exists showing that Wolf and Shoup were reassigned from their previous positions to help perform Hamilton's duties. Viewing the evidence in the light most favorable to Hamilton, questions of fact exist as to whether

possession of a CDL for the occasional need to relieve union drivers was an integral part of the transportation-supervisor position or constituted a minor change in the job description. Therefore, genuine issues of fact exist as to whether Hamilton was terminated because of a true reduction in force.

### Different Treatment

{¶ 49} I would further find that genuine issues of material fact exist as to whether Hamilton was treated differently than similarly situated male employees when SYSCO refused to provide her with free CDL training. The evidence shows that SYSCO was providing free on-site CDL training to male employees who were working primarily in the warehouse department.[1] According to Cook, free CDL training was offered in the 1990s, when "the company used to have a policy where as a matter of career advancement, night warehouse men particularly, as opposed to others, could have taken advantage of it if they wanted to, but typically what happens is, night warehouse men would get their CDL and then they could stop working night shift and start working days as a driver."

{¶ 50} Based on this testimony, the CDL training was not mandatory but useful as a means for career advancement to those warehouse employees wishing to take advantage of the free training. The evidence shows that between 1994 and 1999, while the program was in place, approximately 32 men received the free CDL training offered by SYSCO. During that time, Hamilton repeatedly asked for the training, but her requests were denied.

{¶ 51} SYSCO argues that the free training offered cannot be considered because, based on Hamilton's own admissions, her cause of action does not arise out of actions that occurred while she was a transportation clerk. Hamilton was a transportation clerk between 1996 and October 1999. Although a majority of the free training occurred during this time, the evidence shows that it continued into 2000 and 2001 when Hamilton was an administrative assistant and city desk transportation supervisor.

{¶ 52} Justin Reasoner, an assistant fleet supervisor at SYSCO, received free CDL training sometime between 2000 and 2001, but he did not complete it. He stated that he had not requested the training, but rather it had been arranged for him. Daryl Lengyel stated at deposition that he provided CDL training to SYSCO employees from 1994 until 2001, with Reasoner being the last trainee in 2000. Therefore, evidence exists showing that free CDL training continued after Hamilton was promoted from the transportation-clerk position. Moreover, evidence also exists that warehouse employees were not the only employees who received the training. John Cruikshank, a transportation supervisor, received

---

1. According to SYSCO's motion, the warehouse is a part of the operations department, which also included the transportation department in which Hamilton worked.

the free training in February 1999. According to Hamilton, Cruikshank complained about his being required to get CDL training when Hamilton was not, even though she was also a supervisor.

{¶ 53} Nevertheless, SYSCO claims that Hamilton was not similarly situated to the male employees in the warehouse. Although it is true that Hamilton was not working in the warehouse, both the warehouse and transportation departments are divisions of the operations department. Furthermore, possessing a CDL was not necessary for those warehouse employees to perform their jobs; rather it was a means of career advancement. Hamilton also believed that possession of a CDL would aid her career advancement at SYSCO. She stated at deposition that she had advised management that her goal was to obtain her CDL and ultimately become a transportation supervisor. Therefore, questions of fact exist as to whether the warehouse employees and Hamilton were similarly situated because both sought the CDL training for career advancement.

{¶ 54} Even if we did not consider the period when Hamilton was a transportation clerk, questions of fact exist as to whether Hamilton was similarly situated to Justin Reasoner, who received the training while Hamilton was an administrative assistant and city desk transportation supervisor. SYSCO claims the two were not similarly situated because Reasoner was an "assistant fleet supervisor."

{¶ 55} Different job titles alone do not prove that employees are not similarly situated. In order to determine whether an employee is similarly situated to another, we must consider the "relevant aspects" of their job positions and duties. *Kroh*, 92 Ohio St.3d at 32, 748 N.E.2d 36, citing *Ercegovich*, 154 F.3d 344.

{¶ 56} In the instant case, both Reasoner and Hamilton worked in the operations department and reported to the same supervisor at the time Reasoner received the free CDL training. The evidence demonstrates that a CDL was not required for either Hamilton's or Reasoner's job. In fact, Reasoner did not lose his position as assistant fleet supervisor when he did not complete the CDL training. Instead, he was promoted to transportation supervisor. He admitted at his deposition that he did not possess a CDL, even though he was then director of fleet operations.

{¶ 57} Hamilton was the only administrative assistant in the transportation department, and she received this title shortly after she was passed over for the transportation-supervisor position given to Cruikshank in 1999. During that time, she continued to request the free CDL training. In July 2000, the transportation department created a new position for her: city desk transportation supervisor. Again, she requested the free CDL training. Despite her requests, she was denied the training because it was "not required for her job."

{¶ 58} Although Reasoner and Hamilton had different job titles, they were part of the same general department and reported to the same supervisor, and a CDL

was not required for their jobs. Nevertheless, Reasoner received the CDL training, and even though he did not complete it, he was promoted. Reasonable minds can reach different conclusions as to whether Hamilton was similarly situated to Reasoner when he was provided the CDL training and she was not.

{¶ 59} Even if Hamilton and Reasoner were not similarly situated, an issue of material fact still exists, because offering and providing Reasoner the free CDL training demonstrates that SYSCO provided nonwarehouse employees and supervisors the free CDL training that Hamilton repeatedly requested. Moreover, no evidence was presented that SYSCO denied the free CDL training to anyone requesting it. From the record before us, it appears that only Hamilton was denied the free training.

{¶ 60} Therefore, the evidence that nonwarehouse supervisors received free CDL training creates a genuine issue of material fact as to whether Hamilton was treated differently than similarly situated male employees. At the time that Reasoner received the training, Hamilton was a city desk transportation supervisor. Denying her the training that was provided to another assistant supervisor creates an issue of fact, which precludes summary judgment.

{¶ 61} Accordingly, I would find that genuine issues of material fact exist as to whether Hamilton has established a prima facie case for gender discrimination.

### Reduction in Force

{¶ 62} Even though questions of fact exist as to whether Hamilton can establish a prima facie case for gender discrimination, summary judgment would be proper if SYSCO demonstrated that it had a legitimate, nondiscriminatory reason for laying off and ultimately terminating Hamilton and that it had a legitimate, nondiscriminatory reason for not providing Hamilton the CDL training she requested.

{¶ 63} SYSCO claims that its legitimate, nondiscriminatory reason was that due to economic necessity, a valid reduction in force was necessary, which prompted management to assign additional duties to the transportation-supervisor position, which required a CDL. Because Hamilton did not possess a CDL, she was laid off.

{¶ 64} Ohio courts have recognized that a reduction in force due to economic necessity can be a legitimate, nondiscriminatory reason for an employee's discharge. See, e.g. *Langlois*, 2006-Ohio-3737, 2006 WL 2036553. However, as we stated above, questions of fact exist as to whether Hamilton's discharge was based on a true reduction in force. While requiring all transportation supervisors to possess a CDL appears legitimate on its face, genuine issues of material fact exist as to whether its application and effect were discriminatory. When the additional requirement was implemented requiring all transportation supervisors

to possess a CDL, SYSCO knew that Hamilton did not possess a CDL and, because she lacked a CDL, she would be laid off.

{¶ 65} Although SYSCO repeatedly relies on the fact that Sullivan also lost his position as a transportation supervisor, Sullivan did not suffer the same adverse action as Hamilton due to his prior experience in the warehouse, where possession of a CDL was not required. Thus, only Hamilton, the sole female transportation supervisor, was laid off.

{¶ 66} Moreover, SYSCO has failed to set forth any legitimate, nondiscriminatory reason why it did not provide the free CDL training to Hamilton when she requested it for years. As previously discussed, SYSCO was providing free onsite CDL training to male employees who were working primarily in the warehouse. Although SYSCO argues that Hamilton did not require a CDL to perform her job duties at that time, the evidence shows that none of the male employees needed a CDL to perform their job duties while working in the warehouse. In fact, Cook stated at deposition that the free CDL training was a means of "career advancement" for the "night warehouse men." Because Hamilton stated that she inquired about the training for her career advancement, questions of fact exist as to whether SYSCO's reason for denying her the training was discriminatory.

{¶ 67} Therefore, viewing the evidence in the light most favorable to Hamilton, I would find that the trial court erred in granting SYSCO summary judgment on Hamilton's gender-discrimination claim. Reasonable minds could reach different conclusions as to whether SYSCO's denying CDL training to Hamilton prevented her from obtaining her CDL, which constituted the basis for her being laid off.

{¶ 68} Accordingly, I would reverse the trial court's decision on this claim.