[Cite as *Town v. Sidoti*, 2026-Ohio-963.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
ERIE COUNTY

David H. Town                                     Court of Appeals No. E-25-041

        Appellant

                                Trial Court No. CVI 2400430

v.

Tarina Sidoti                                     **DECISION AND JUDGMENT**

        Appellee                          Decided: March 20, 2026

* * * * *

Tarina Sidoti, for appellee.

Daniel L. McGookey, for appellant

* * * * *

**MAYLE, J.**

{¶ 1} In this negligent misrepresentation action, appellant, David Town, appeals the August 6, 2025 judgment of the Sandusky Municipal Court overruling his objections to the April 24, 2025 magistrate's decision that granted judgment in favor of appellee, Tarina Sidoti. For the following reasons, we affirm.

# I. Background and Facts

{¶ 2} This case arose from Town's purchase of a condominium on Westwind Drive in Sandusky, Ohio. According to his complaint, when Town purchased his home, one of the "primary features" of the home in the "MLS listing" was the home having "heated floors in the Master Suite." Based on that representation, Town expected heated floors throughout the master suite, i.e., in the entire master bedroom and master bathroom area. However, upon moving in, he discovered that the floors were heated only in the bathroom, not in the whole suite, as advertised in the listing. A flooring contractor told him that it would cost $4,130 to install heated floors in the master bedroom. His real estate agent contacted the listing agent—Sidoti—who "said that she made a mistake, but that she wouldn't pay for [his] contractor to install the heated floors."

{¶ 3} Sidoti, who has appeared pro se throughout these proceedings, filed a response to Town's complaint in which she "den[ied] all allegations of wrongdoing," requested that the trial court dismiss the case, and provided several reasons why she believed that she was not liable to Town. Specifically, she claimed that the comment in the MLS listing that "'[t]he master suite will WOW you with its top-of-the-line finishes including heated floors'" was a marketing statement meant to describe the floors of the master bathroom, which was part of the master suite. Additionally, both the MLS listing and the Zillow listing for the home included language indicating that the information was not warranted. Next, because Town bought the home as-is and waived inspections, he bought it without guarantee of any specific features or finishes, and there was no mention of heated floors in the parties' purchase contract. Third, Town did not ask about the

2.

extent or location of the heated floors during the purchase process or tell anyone that this was a deciding factor in his purchase decision. Town was also represented by his own agent, who had a fiduciary duty to him and had access to the property to verify the features. Fourth, Sidoti denied any intent to deceive or misrepresent the features of the property. Finally, Sidoti pointed out that she was not a party to the purchase contract, which was only between Town and the seller, and any dispute should be settled between the parties to the contract.

{¶ 4} Town's complaint was heard by a magistrate. At the trial, Town called real estate agent, Sally Routh, his niece, Jennifer Jackway, and Sidoti, and testified in his own behalf. Sidoti testified in her own behalf.

{¶ 5} Town first called Sidoti on cross-examination. Sidoti testified that she listed a property on Westwind Drive for sale as the real estate agent. Before listing the property, she met with the seller, toured the property, took notes, came up with a price, entered the information into the MLS system, "double-checked everything," and sent the listing to the seller to proof. From her examination of the property, she "100 percent knew the heated floors were in the en suite, which is bathroom to [her]. [She] knew the floors were not heated in the bedroom or around the bed."

{¶ 6} The marketing paragraph that Sidoti wrote for the property included the sentence, "[t]he master suite will WOW you with its top-of-the-line finishes including heated floors." This statement was included in the MLS listing for the property. Sidoti agreed with Town's counsel that "boil[ing] that sentence down, you're making representation in the MLS listing that there are heated floors in the master suite[.]" The

3.

bottom of the MLS listing included the statement, "[a]ll data subject to errors, omissions or revisions and is NOT warranted."

{¶ 7} Following the sale, Sidoti had a text conversation with Routh, Town's real estate agent, in which they had the following exchange:

> [Routh:] Good Moring Tarina.  I'm afraid there is an issue [with the condo].  The marketing remarks said there are heated floors in the master bedroom.  The floor is not heated.  Buyer is upset.  He is getting an estimate on replacing the flooring.  He is asking for reimbursement. . . .

> [Sidoti:] I'll have to look back at my notes, but I am almost positive they were heated floors.  However, what's on the MLS is not warranted…you know that.

> . . .

> [Sidoti:] Oh you mean bedroom?  No the floors are only heated in bathroom.

> . . .

> [Sidoti:] Certainly was not intended to mislead.

> Says "en-suite"….

> A home inspector would have pointed that out.

> Ugg sorry for any confusion

(Second and final ellipses in original.)

{¶ 8} Sidoti denied ever admitting that she had made a mistake in the listing and said, "I don't think I did anything wrong."  She claimed that she would "never mislead or fraudulently misrepresent a property."

{¶ 9} Counsel had Sidoti read R.C. 4735.18(A)(21), which provides that a real estate agent can be disciplined for "'[h]aving published advertising whether printed, radio, display or any other nature, which was misleading or inaccurate in any material

4.

particulars or in any way having misrepresented any properties turned, policies or services of the business conducted.'" She agreed that it was against the rule for a realtor to negligently misrepresent facts in an MLS listing. However, Sidoti said that "[n]ot one part of [her]" thought that the MLS listing for the condo was misleading.

Routh testified that she had been a real estate agent since 1985 and a real estate broker since 2000. She also taught pre-licensure classes for years.

{¶ 10} Regarding the MLS listing for the condo, Routh explained that "when it says suite, we refer to the bathroom and the bedroom that it's connected to." "Suite" did not mean just one room.

{¶ 11} Routh was Town's real estate agent when he purchased the condo and she showed him the condo. Town went through the condo twice. Routh did not realize that heated floors in the bedroom were important to Town until after closing, when Jackway told her that Town had learned that the bedroom floors were not heated. The issue had not come up before that.

{¶ 12} After learning about the problem, Routh called Sidoti. According to Routh, "I said, 'Tarina, we have an issue.' I said, 'The buyer thought the master bedroom floors were heated.' And it says that in the—and she said, 'Well, let me look at my records.' And then you pulled up your records. And then you then you waited, paused and then you said, 'Well, haven't you ever made a mistake?'"

{¶ 13} Routh did not remember their conversation happening in text messages, but she did not see why they would have had the same conversation twice. Regardless, she

5.

recalled Sidoti commenting, "'Well, haven't you ever made a mistake?'" during a phone conversation.

{¶ 14} Routh discussed a portion of a white paper produced by the Ohio Association of Realtors regarding misleading statements in real estate advertising, which explained that "[t]he licensing laws require that all real estate advertisements be truthful and free from any misleading statements . . . . Even if the misrepresentations are made inadvertently, they may trigger liability . . . . R.C. § 4735.18(A) (21) states that any broker or agent who publishes a false or misleading advertisement is subject to discipline by the Ohio Real Estate Commission."

{¶ 15} Routh believed that the prohibition in R.C. 4735.18(A)(21) applied to this situation because, "I just think it was misrepresented, but I don't think it was on purpose. I think it was just a mistake. . . . But in this situation, it was something in the remarks that were very important to the buyer." The mistake she was referring to was the bedroom of the master suite not having heated floors.

{¶ 16} Based on her education and experience as a realtor, Routh "believe[d] that [Sidoti] made a mistake that was important to the buyer" and that she unknowingly put out an MLS listing that was false or misleading.

{¶ 17} On cross-examination, Routh testified that she was not aware before closing of a problem with Town's feet that required heated floors.

{¶ 18} Routh gave Town an MLS listing sheet when she showed him the property that would have had the warranty disclaimer language on it. She did not tell Town that the information in the MLS listing was not warranted and that he needed to do his own

6.

due diligence. Although Town wanted an inspection, Sidoti told them that the seller had an inspection that was only a year old, and Town agreed to accept that. The inspection did not mention any heated floors.

{¶ 19} Town was in the house with Routh twice before signing the purchase contract and the heated floors did not come up.

{¶ 20} Jackway testified that she is Town's niece. He moved to the area because she lives here. When he was preparing to move here, they called Routh, who found three real estate listings to show him. Jackway was aware of the importance of heated floors because Town has neuropathy in his feet.

{¶ 21} They looked at the condo he purchased once before he made an offer. Routh advised Town to make a full-price offer even though the condo had been on the market for a while "because it had everything he needed and wanted." The heated bedroom floors were very important to Town; in fact, "[a]ll he talked about were those floors."

{¶ 22} When Jackway heard that the "master suite" had heated floors, she thought that "it's the bedroom and the en suite bathroom that would have the heat in the floors. And if you will look at the MLS listing, it says heated floors with an 'S' at the end of it which indicates, you know, more than one. And it just—by virtue of the word 'suite,' it's clearly a bathroom and a bedroom combination. That's the definition of suite." She thought that heated floors in the master suite meant that Town would not have to worry about the laminate floors in the bedroom being cold, despite not having carpet.

7.

{¶ 23} She and Town discovered that the bedroom did not have heated floors after Town purchased the property. Town allowed the seller to stay in the condo for a couple of weeks, and after she moved out, he and Jackway went to the condo. When Jackway turned on the thermostat that should have controlled the heated floors in both the bedroom and the bathroom, the bedroom floors did not heat up. There was no way to tell from looking at the thermostat which areas it controlled.

{¶ 24} Immediately after discovering the issue with the floors, Jackway called Routh, who said that she would call Sidoti. Shortly after, Routh called back to relay her conversation with Sidoti.

{¶ 25} On cross, Jackway testified that she did not tell Routh about Town's health condition or that he needed heated floors. In fact, heated floors were not mentioned before closing at all. They brought the issue with the floors to someone's attention as soon as they noticed it. Although Jackway spoke to both Sidoti and the owner, she never asked either about the heated floors.

{¶ 26} Town testified that he moved to Sandusky to be close to Jackway, his niece and legal guardian. He explained that he has neuropathy, which "is basically a circulation problem with the legs and the feet and the flow of blood." Because of that, heated floors in his master bedroom were important to him. He explained that he has to "get up multiple times during the night to go to the bathroom and be[ing] able to put [his] feet down on warm surface, that also helps with the circulation of blood in the legs too, feet."

8.

{¶ 27} Before viewing the condo, he had read the MLS listing representing that there were heated floors in the master suite. He explained that heated floors were "a definite plus" and were "important." However, "[i]t's not like [he] wouldn't have bought the house maybe if it didn't have heated floors, but [he] sure wouldn't have paid full price for the house." He would have offered at least $5,000 less for the condo if he had known about the floors.

{¶ 28} He first learned that the bedroom did not have heated floors "[w]hen [he] talked to [the seller] and made mention to her how excited [he] was about the heated floors, and she told [him] that there weren't any heated floors." This conversation occurred when the seller was living in the condo after closing. Town immediately told Jackway, who contacted Routh.

{¶ 29} On cross-examination, Town explained that the lack of heated floors was not "deadly" but was a "total inconvenience." He said, "[i]t's something that I wish I had, and something that I had purchased when I purchased the home." He admitted that he did not plan to buy only a house with heated floors. He also admitted that he did not check to see where the thermostat was or how it worked when he was touring the condo because it was very warm in the house and he assumed that the thermostat operated both floors because the MLS listing said "'[w]ow, heated floors.'"

{¶ 30} Regarding an inspection, Town said that the seller could have put heated floors in after the inspection was done and they would not have been included in the inspection.

9.

{¶ 31} Town got an estimate for installing heated floors in the master bedroom, which would cost $4,130. He described the lack of heated floors for the nine months he had lived in the apartment as "an inconvenience in the sense of hitting cold floors . . . ."

{¶ 32} He chose to sue Sidoti personally because he was "going after what was written on the MLS. And the representation that was made on the MLS is what [he] bought the home with the representation."

{¶ 33} The purchase agreement said that the home was being sold as-is. There was no language about floors in the contract. Town signed a document before closing removing the general inspection contingency from the purchase contract. He did not recall seeing that document.

{¶ 34} In her direct testimony, Sidoti pointed out that a real estate purchase is "buyer beware" and a purchaser is required to do their own due diligence regarding a property. Additionally, Town had his own representation who had a fiduciary duty to him.

{¶ 35} Sidoti explained that she meets with a client and views a property before writing the description that goes on the MLS listing for that property. Once she has written the marketing paragraph, she sends it to the seller for their review to make sure she did not miss anything. After that, the listing "goes live" and is available to anyone on the internet. Information on an MLS listing or third-party real estate sites, like Zillow or Realtor.com, is not warranted. Although third-party sites pull their information from the MLS listing, the information they show may not look the same as the MLS listing

10.

because "sometimes they pull part of the information, not all of it. [She has] no control over what they decide to retrieve and what they don't . . . ."

{¶ 36} No one asked Sidoti about heated floors and no one mentioned heated floors before closing. If they had, Sidoti, the seller, or both could have addressed the issue through negotiation. She also claimed that the statement in the MLS was true because there are heated floors in the master en suite bathroom.

{¶ 37} On cross, Sidoti confirmed that she was claiming that there was no misstatement in the MLS listing when it says that there are heated floors in the master suite. She also claimed that she was protected by the disclaimer language on the MLS listing for any misstatement that might have existed. She explained that "[s]ometimes we are relying on our clients. So as realtors and brokers, we are protected from that line, because we can't be held liable for what our clients say."

{¶ 38} Following the trial, the magistrate issued a decision finding in Sidoti's favor and dismissing Town's complaint. In his findings of fact, the magistrate noted that the parties had different interpretations of what it meant to have heated floors in the master suite of the condo, but he did not determine which interpretation was correct.

{¶ 39} In his conclusions of law, the magistrate found that Town failed to prove negligent misrepresentation because he could not prove justifiable reliance. Town admitted that he did not investigate whether the bedroom floors were heated before closing, he did not inquire about the bedroom floors being heated before closing, and he never advised anyone (including his own realtor) about his need for heated flooring. Further, the magistrate found that the tort of negligent misrepresentation does not apply

11.

to a consumer transaction like a real estate sale, nor does it apply in the absence of a fiduciary relationship. Because there was no fiduciary relationship between Town and Sidoti and the transaction involved was a consumer transaction, negligent misrepresentation was wholly inapplicable.

{¶ 40} Town filed objections to the magistrate's decision. First, he argued that the magistrate erred by finding that he failed to prove justifiable reliance because it ignored Town's testimony that "due to a health condition, the listing's statement that the condominium came with heated floors in the Master Suite, is what attracted him to the unit in the first place[.]" Town also testified that he would have offered less for the condo if he had known that the bedroom floors were unheated, and the MLS listing noted that the "Master Suite" had heated floors, but only the master bathroom floors were heated. Second, he argued that the magistrate erred as a matter of law by finding that Sidoti, as the seller's realtor, had no duty to him, as the buyer. He claimed that this finding added an element not required for a finding of negligent representation. Finally, he argued that the magistrate erred as a matter of law by finding that negligent misrepresentation does not apply in consumer transactions because that conclusion was "contrary to mountains of case law" and misconstrued the cases the magistrate relied on.

{¶ 41} The trial court summarily overruled Town's objections and adopted the magistrate's decision. The court dismissed Town's complaint.

Town now appeals, raising one assignment of error:

> THE TRIAL COURT ERRED IN ADOPTING THE DECISION OF THE MAGISTRATE FINDING THAT THE APPELLANT'S COMPLAINT SHOULOD [sic] BE DISMISSED

12.

## II. Law and Analysis

{¶ 42} In his assignment of error, Town raises three arguments. First, he argues that the trial court erred by adopting the magistrate's finding that he failed to prove the reasonable reliance element of negligent misrepresentation because the magistrate's finding was against the manifest weight of the evidence. He contends that the magistrate's finding improperly imposed upon him a duty to make further inquiry, despite the representation not appearing unreasonable on its face and there being no apparent reason to doubt its veracity. Next, he argues that the trial court erred as a matter of law by adopting the magistrate's finding that Sidoti, as the seller's agent, had no duty to him, as the buyer of the condo. He claims that privity between the parties is not an issue in a negligent representation case. Instead, the issue the magistrate should have considered is whether a third party's reliance on the information was foreseeable. Finally, he argues that the trial court erred by adopting the magistrate's finding that the tort of negligent misrepresentation does not apply to a real estate purchase transaction. He contends that the magistrate reached his conclusion by misinterpreting case law, and numerous cases support a finding that negligent misrepresentation can apply to a real estate transaction.

{¶ 43} In response, Sidoti argues that (1) Town failed to prove that the remark in the MLS was materially false or that he suffered any damages as a result of the statement; (2) the disclaimer on the MLS clearly demonstrates that statements in the MLS are for marketing purposes only and are not warranted; (3) the parties' obligations were solely governed by the sale contract and the comments in the MLS were not incorporated into

13.

that contract; (4) Town waived an inspection of the condo and accepted the property "as is"; and (5) Town was represented by his own real estate agent who had a duty to investigate any uncertain features of the property. Sidoti also argues that we should reject Town's claims because he "is repeating the same argument already rejected twice. The small claims court considered the evidence and rejected the claim. The appellate court upheld that ruling. This further appeal raises no new facts and no legal basis for reversal."

## A. Town has properly appealed his case.

{¶ 44} As a preliminary matter, we address Sidoti's argument that we should reject Town's claims simply because they have already been rejected by the magistrate and trial court. Under Civ.R. 53(D)(3)(b), a litigant may file objections to a magistrate's decisions. If he does so, the court that referred the matter to the magistrate is required to independently review the matter and rule on the objections. Civ.R. 53(D)(4)(d). Once the trial court has issued its decision in a case, a litigant can appeal the outcome to the court of appeals because "every litigant in Ohio is entitled to an appeal as of right by filing a notice of appeal within the time allowed" by App.R. 4. (Cleaned up.) *Moldovan v. Cuyahoga Cty. Welfare Dept.*, 25 Ohio St.3d 293, 294 (1986), citing App.R. 3(A). When a party files a timely notice of appeal, we are constitutionally bound to "review and affirm, modify, or reverse judgments or final orders of the courts of record inferior to the court of appeals within the district . . . ." Ohio Constitution, art. IV, § 3(B)(2).

{¶ 45} Here, Town followed the appropriate process for having the outcome of his case reviewed. When he did not get the result he wanted, he first objected to the

14.

magistrate's decision, as provided for in Civ.R. 53(D)(4)(b), then he filed a timely notice of appeal, as provided for in App.R. 3 and 4. This is all that he was required to do. Because Town has properly pursued this appeal that he is entitled to, we are required to review it. Thus, we reject Sidoti's claim that we must disregard Town's arguments because they have already been rejected by the magistrate and the trial court.

## B. Town did not prove the elements of negligent misrepresentation.

{¶ 46} After reviewing the record, we find that Town failed to prove all of the element of negligent misrepresentation, and the trial court did not abuse its discretion by adopting the magistrate's decision.

{¶ 47} Generally, we review a trial court's decision on objections to a magistrate's decision for an abuse of discretion. *Baker v. R/A Cab Co.*, 2019-Ohio-4375, ¶ 10 (6th Dist.). Abuse of discretion means that the trial court's decision is unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610 (1996). However, when an appeal from a trial court's action on a magistrate's decision presents a question of law, we review the issue de novo. *Slayton v. Peterson*, 2024-Ohio-863, ¶ 19 (6th Dist.).

Negligent misrepresentation occurs when

> "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others *in their business transactions*, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information."

(Emphasis added and deleted.) *Delman v. Cleveland Heights*, 41 Ohio St.3d 1, 4 (1989),

quoting 3 Restatement of the Law 2d, Torts, § 552(1), at 126-127 (1965). Negligent misrepresentation is a business tort and, "[t]herefore, the elements for negligent misrepresentation 'require (1) a defendant who is in the business of supplying information; and (2) a plaintiff who sought guidance with respect to his business transactions from the defendant.'" *Hamilton v. Sysco Food Servs. of Cleveland, Inc.*, 2006-Ohio-6419, ¶ 20 (8th Dist.), quoting *Nichols v. Ryder Truck Rental, Inc.*, 1994 WL 285000 (8th Dist. June 23, 1994).

{¶ 48} Here, Town was not involved in a "business transaction" as a matter of law. He, as an individual, purchased the condo from another individual for use as his personal residence. Nothing about this transaction indicates that Town entered into it for business purposes. Because he was not involved in a business transaction, the information that Sidoti supplied in the MLS listing could not have been "for the guidance of [Town] in [his] business transactions," as required to prove negligent misrepresentation. *Delman* at 4. Therefore, Town failed to prove this element of negligent misrepresentation.

{¶ 49} Town cites cases to support his position that negligent misrepresentation is applicable to real estate transactions like the purchase of his condo, but these cases do not address the business transaction element of negligent misrepresentation. *See Jochum v. Howard Hanna Co.*, 2020-Ohio-6676 (11th Dist.); *Davis v. Montenery*, 2007-Ohio-6221 (7th Dist.). In *Jochum*, the Eleventh District summarily affirmed summary judgment on the plaintiff's negligent misrepresentation claim because he presented no evidence that the defendants supplied him with false information, without ever addressing whether the parties were engaged in a business transaction. *Jochum* at ¶ 40. And in *Davis*, the

16.

Seventh District found that the negligent misrepresentation claim failed and summary judgment was appropriate because the plaintiff failed to show justifiable reliance, without ever addressing whether the parties were engaged in a business transaction. *Davis* at ¶ 74-75. Because these cases did not address a critical element of the negligent misrepresentation test, we find that they are distinguishable.

{¶ 50} Further, even if we assume that the real estate sale was a "business transaction," Town failed to show justifiable reliance on Sidoti's statement in the MLS listing. "Reliance is justifiable if the representation does not appear unreasonable on its face and if there is no apparent reason to doubt the veracity of the representation under the circumstances." *Amerifirst Savs. Bank of Xenia v. Krug*, 136 Ohio App.3d 468, 495 (2d Dist. 1999). Justifiable reliance, as compared to reasonable reliance, "'is a matter of the qualities and characteristics of the particular plaintiff, and the circumstances of the particular case, rather than of the application of a community standard of conduct to all cases.'" *Id.* at 496, quoting *Field v. Mans*, 516 U.S. 59, 70-71 (1995). In determining whether one party justifiably relied on the other's statements, "the court must inquire into the relationship between the parties. . . [and] must consider the nature of the transaction, the form and materiality of the representation, the relationship of the parties and their respective means and knowledge, as well as other circumstances." *Mishler v. Hale*, 2014-Ohio-5805, ¶ 33 (2d Dist.).

{¶ 51} In this case, as the magistrate found and the trial court adopted, the facts do not support a finding that Town's reliance on the representation in the MLS listing was justified. Town toured the condo twice but admitted that he did not investigate whether

17.

the floors in the master bedroom were heated or whether the thermostat in the master bathroom controlled the floors in the master bedroom. He also chose not to have the condo inspected before purchasing it. Instead, he chose to rely on a year-old inspection that did not mention *any* heated flooring (including in the master bathroom), which still did not prompt him to investigate the existence or extent of the heated floors in the master suite. Beyond that, the MLS listing itself clearly states that "[a]ll data is subject to error, omissions or revisions and is NOT warranted." And Town and Routh testified that Town did not mention the importance of heated floors to anyone before closing.

{¶ 52} In *Abbott v. Loss Realty Group*, 2005-Ohio-5876, a case similar to this one, we likewise found that the plaintiffs failed to prove justifiable reliance. There, the sellers' real estate agent listed the home as 1,991 square feet, but shortly after closing, the Abbotts learned that it was actually 1,445 square feet. *Id.* at ¶ 5-6. The Abbotts had inspected the home three times before closing; the fact sheet with the square footage also included the wrong number of bedrooms; the only comment one of them made about the size of the house was that "'he was not comfortable that the living room was big enough for some of his furniture'"; the tax records for the home showed that it had 1,991 square feet, which included a 480 square foot garage; the purchase contract stated that the Abbotts were purchasing the home subject to inspection rights and in as-is condition; and the information sheet on which the sellers' agent included the square footage of the house included the statement, "'[a]ll information herein is from sources deemed reliable. No representation is made as to its accuracy. It is provided subject to error and omissions and to change of price or terms, prior sale or lease, or withdrawal, all without notice.'"

18.

*Id.* at ¶ 11-14. Based on those facts, and the fact that the Abbotts neither directly inquired about the size of the house before closing nor told anyone that the price-per-square-foot of the house was a material factor in their decision to purchase that house, we found that the Abbotts did not justifiably rely on the information in the listing sheet, so their negligent misrepresentation claim failed. *Id.* at ¶ 24. We specifically found that the language on the fact sheet disclaimed liability. *Id.* at ¶ 25.

{¶ 53} Like the Abbotts, Town had ample opportunity to inspect the floors in the master suite, he was warned that the information on the MLS listing sheet might not be accurate and was not guaranteed, and he did not tell either of the real estate agents that heated bedroom floors were important to his purchase decision. Under these circumstances, we cannot say that the trial court abused its discretion by adopting the magistrate's determination that Town did not justifiably rely on Sidoti's statement about heated floors in the master suite. Therefore, Town's assignment of error is not well-taken.

### III. Conclusion

{¶ 54} For the foregoing reasons, the August 6, 2025 judgment of the Sandusky Municipal Court is affirmed. Town is ordered to pay the costs of this appeal under App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, P.J.

                                                    JUDGE

Christine E. Mayle, J.

                                                    JUDGE

Myron C. Duhart, J.
CONCUR.                                             JUDGE

---

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.

---

**DUHART, J., Concurring,**

{¶ 55} I write separately from the majority because I believe the analysis applied in this case reflects an unduly restrictive interpretation of negligent misrepresentation and does not adequately address several critical issues raised by the facts before us.

In my view, courts construing the elements of negligent misrepresentation often read those requirements too narrowly, thereby improperly denying recovery to foreseeable plaintiffs—such as purchasers of residential real estate—who suffer harm as a result of false information disseminated through an MLS listing.

{¶ 56} Relatedly, this case presented a meaningful opportunity regarding the extent to which a buyer of real property may reasonably rely on professional representations made by a seller's agent. It also warranted examination of whether Sidoti, as the seller's agent in this matter, failed to exercise reasonable care or competence in

20.

obtaining or communicating the information concerning the heated floors in the master suite.

{¶ 57} I believe the court's analysis was incomplete in assessing justifiable reliance. In my view, the trial court in its analysis should have placed a higher level of scrutiny on whether the information at issue was false and whether Sidoti exercised reasonable care in obtaining or communicating that information. Instead, it seems the court focused almost exclusively on Town's alleged failure to investigate, while giving no consideration to the MLS statement itself or to the role that statement may have played in shaping Town's actions.

{¶ 58} However, despite these concerns, I recognize that the trial court retained discretion to determine whether Town's reliance on Sidoti's statement regarding heated floors in the master suite was justified. For that reason, I concur in the majority's opinion regarding justifiable reliance.

{¶ 59} With respect to the requirements for establishing negligent misrepresentation, I accept that the majority accurately recites the formal elements of this claim. However, I believe the majority opinion neglects to acknowledge that this court has also previously made clear—that the "essential elements" of negligent misrepresentation are simply "false information and justifiable reliance." *Abbott v. Loss Realty Group*, 2005-Ohio-5876, ¶ 23 (6th Dist.). Notably absent from the list of "essential" elements is any *strict* requirement that a plaintiff must be guided in his "business transactions" by the defendant in order to succeed on a negligent misrepresentation claim.

21.

{¶ 60} Likewise, in *Moffitt*, 2006-Ohio-3064 (6th Dist.), this court has previously interpreted the "business transactions" component of negligent misrepresentation with considerable breadth when we held that a negligence claim based on allegedly false representations by a doctor's office—specifically, that it would notify the plaintiff's employer that the plaintiff was medically unable to attend work—was sufficient on its face to support a negligent misrepresentation claim.

{¶ 61} Consistent with this court's approach in *Moffitt*, I believe the tort of negligent misrepresentation should be broadened to include circumstances such as those presented here, even though Town was not engaged in a "business transaction" in the narrow sense typically contemplated.

{¶ 62} Nevertheless, because Town was not involved in a narrowly contemplated business transaction, the information Sidoti supplied in the MLS listing cannot be said to have been provided "for the guidance of [Town] in [his] business transactions." For this reason and those stated above, I ultimately concur with the majority's conclusion that Town failed to establish a claim for negligent misrepresentation.

22.